UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FREDDIE J. YOUNG,

         Plaintiff,                CIVIL ACTION NO. 08-14475

      v.                      DISTRICT JUDGE SEAN F. COX

COMMISSIONER OF           MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

         Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.**       **INTRODUCTION**

Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision

disallowing benefits (Dkt. No. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), this matter was referred to the undersigned for a Report and Recommendation.  This

matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 8, 13).

In light of the entire record in this case, I suggest that the Administrative Law Judge

("ALJ") failed to give controlling weight to medical evaluations by Plaintiff's treating physicians

or to adequately explain his reasons for such action.  Therefore, it is **RECOMMENDED** that

Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary

judgment be **DENIED**, and that this matter be **REMANDED** for further proceedings consistent with the discussion below.

### A. Administrative Proceedings

Plaintiff filed the instant claims on November 1, 2005, alleging that he became unable to work on September 30, 2001 (Tr. at 40); Plaintiff later amended his alleged disability onset date to January 2, 2002 (Tr. at 15). The claim was initially disapproved by the Commissioner on April 11, 2006 (Tr. at 36). Plaintiff requested a hearing and, on March 24, 2008, Plaintiff appeared with counsel before ALJ Michael F. Wilenkin, who considered the case *de novo*. In a decision dated April 29, 2008, the ALJ found that Plaintiff was not disabled (Tr. at 12, 21). Plaintiff requested a review of this decision on May 9, 2008 (Tr. at 10). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1, AC-2 , Tr. at 9), the Appeals Council denied Plaintiff's request for review on October 9, 2008. (Tr. at 5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). This lawsuit followed on October 21, 2008.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

II.    STATEMENT OF FACTS

   *A.    ALJ Findings*

Plaintiff was 50 years of age at the time of the most recent administrative hearing (Tr. at 18).  Plaintiff has an eleventh grade education and worked in the past as a painter (Tr. at 18). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since January 2, 2002, Plaintiff's alleged disability onset date (Tr. at 17).  At step two, the ALJ found that Plaintiff suffered from the following "severe" impairments: chronic back pain from degenerative disease at L5-S1, with L5 radiculopathy and history of mild renal problems.  *Id*.

At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id.*  The ALJ next found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of "sedentary" work (Tr. at 17).  In making this finding, the ALJ rejected the opinions of Plaintiff's treating physicians (Drs. Densely and Rengachary) and found that "the evidence did not indicate that [Plaintiff's] condition would result in pain of a severity to preclude him from nonexertional work, such as sedentary work" (Tr. at 19).  In reaching this conclusion, the ALJ appeared to rely heavily on the fact that Plaintiff decided to avoid back surgery, even though it had been recommended by his neurologist.  *Id.* Furthermore, the ALJ noted that Plaintiff's physician (Dr. Densley) failed to specifically note why Plaintiff was unable to perform even nonexertional work.  *Id.*

At step four, the ALJ found that Plaintiff could not perform his previous work as painter, which was performed at a level of "light" exertion.  *Id*.  At step five, the ALJ denied Plaintiff

benefits because Plaintiff could perform a significant number of "sedentary" jobs available in the national economy (Tr. at 20-21).

### B.      Administrative Record

#### 1.      Plaintiff's Testimony and Statements

During the hearing, Plaintiff testified that he stopped working in 2001 as a result of back pain (Tr. at 202). Plaintiff testified that his back pain was all along his lower back, at his waistline. *Id.* Plaintiff further stated that his back pain radiates down both of his legs, all the way to his toes (Tr. at 203-205). Plaintiff stated that he has undergone "trigger point" injections, which relieved some of his pain temporarily, but not completely (Tr. at 206-207). He takes Motrin and Vicodin for pain relief, but these medications do not adequately control his pain (Tr. at 207-208). Plaintiff acknowledged during the hearing that his doctors recommended back surgery, but that he wished to avoid surgery (Tr. at 208). Plaintiff also stated, however, that he would eventually undergo surgery if his back pain did not improve. *Id.*

Plaintiff testified that he is able to take care of his personal needs; however, he has difficulty shaving due to the fact he gets numbness in his hands when raising his arms (Tr. at 213). His children do the housework and he assists them with cooking (Tr. at 213). Plaintiff testified that he takes naps during the day because he can hardly sleep at night (Tr. at 215). Specifically, Plaintiff sleeps three to four hours a day (Tr. at 215), has a hard time sleeping and can only stay in bed approximately two to three hours as a result of his pain (Tr. at 217). Plaintiff further testified that he can only sit in a chair 20-30 minutes (Tr. at 215). The most comfortable position for Plaintiff is laying down, and during the day he lays down at least four to five hours

(Tr. at 216). Plaintiff indicated that he can only stand for 20-30 minutes due the numbness, aching and pain in his back (Tr. at 216). He can only walk for approximately one block due to pain (Tr. at 216).

### 2. Medical Evidence

Plaintiff's medical record are comprised mainly of the files of two doctors – Dr. Setti Rengachary and Dr. Theodore Densley. Dr. Rengachary first saw Plaintiff on December 8, 2005. On his first evaluation of Plaintiff, Dr. Rengachary diagnosed chronic degenerative disc disease at L5-S1 with foraminal stenosis and L5 radiculopathy as well as the possibility of some instability (Tr. at 124-126). Dr. Rengachary noted that he reviewed an MRI (Tr. at 127) showing advanced degenerative changes with retrolisthesis at L5-S1. *Id*. Dr. Rengachary also noted disc collapse with darkening of the disc, black disc, modic changes of the endplate, and tight foraminal stenosis bilaterally, right side worse than left (Tr. at 126). On physical examination, Dr. Rengachary noted positive straight leg testing on the right with induction of radicular pain at about 60 degrees, mild hypalgesia on the medial aspect of the foot and the L5 dermatome, and mild weakness with dorsiflexion of the big toe (Tr. at 126). At the time of this evaluation, Dr. Rengachary noted that Plaintiff will eventually require a fusion with pedical screws stabilization because all conservative measures have failed (Tr. at 126).

In a report dated February 9, 2006, Dr. Rengachary opined that Plaintiff will definitely get benefit from L5-S1 fusion with cage placement, pedicle screw stabilization, and bony fusion (Tr. at 122). Again, Dr. Rengachary noted that Plaintiff is not enthused about going for surgery. *Id.* Dr. Rengachary noted a prescription for pain medications, including Vicodin (Tr. 122). Dr.

Rengachary's files also contain a note dated July 20, 2006 (Tr. 119), in which Dr. Rengachary indicates that he has been following Plaintiff since December of 2005 for L5-S1 foraminal stenosis and L5 radiculopathy. Dr. Rengachary again indicates that he has recommended surgery, but that Plaintiff is unwilling to consider surgery. *Id.* Dr. Rengachary also indicates that Plaintiff refused to fill out forms concerning his functional capacity and made a referral for Plaintiff to be seen by a physical therapist for a functional capacity evaluation (Tr. at 119).

A physical therapist, John Netti, completed a portion of the Medical Source Statement on August 26, 2006. Mr. Netti indicated that Plaintiff's abilities were moderately limited in the following areas: (1) to perform activities within a schedule, (2) to maintain regular attendance and be punctual within customary tolerances, (3) to complete a normal work day and work week without interruptions from medically based symptoms, and (4) to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. at 141).

The record also contains documents from Dr. Densley, including a letter dated March 21, 2006, stating that Plaintiff is "currently disabled and is unable to participate in work-related activities" due to advanced lumbar disc disease (Tr. at 112). Dr. Densley also completed a Medical Source Statement on July 18, 2006, indicating that Plaintiff's disability began as of October 21, 2002, and was expected to last at least 12 continuous months (Tr. at 113). Dr. Densley also indicated that Plaintiff's total combined capacity to sit during the entire eight hour work day is two hours and his total capacity to walk and/or stand during the entire eight hour work day is limited to one hour (Tr. at 114). In addition, Dr. Densley indicated that Plaintiff would need to lie down at least one hour in an eight hour work day (Tr. at 114).

On November 27, 2006, Dr. Densley indicated that Plaintiff's condition of chronic low

back pain due to spinal stenosis precludes Plaintiff's ability to perform activities of prolonged

standing, sitting, walking, lifting, and carrying (Tr. at 144).  In addition, Dr. Densley indicated

that Plaintiff's medications may affect his ability to perform satisfactorily (Tr. at 144).  Dr.

Densley also completed a Medical Needs Form for the State of Michigan - Family Independence

Agency (Tr. at 143).  In this form, Dr. Densley indicated that Plaintiff needs help with meal

preparation, shopping/errands, laundry and housework (Tr. at 143).  The record also contains a

progress note dated March 18, 2008, from Dr. Densley, which indicates that Plaintiff was

complaining of insomnia for two months due to pain in his lower back and numbness in his legs

(Tr. at 145).

Plaintiff's medical records also include MRIs from Detroit Medical Center dated

September 27, 2002, and October 19, 2002 (Tr. at 174).  The MRI reports stated an impression

that included facet hypertrophic arthropathy and neural foraminal stenosis, most severe at L5-S1,

mild central canal stenosis at L5-S1 caused by a combination of diffuse disc bulge, central

posterior disc protrusion and facet hypertrophic arthropathy, and a broad central posterior and

right paramedian disc protrusion at L5-S1effacing the intradural segment of the right S1 nerve

root (Tr. at 174).

## III.    DISCUSSION

### A.    *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the

administrative agency handles claims, and the judiciary merely reviews the agency determination

for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493

U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an

initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to

the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this

administrative review process, the claimant may file an action in federal district court. *Id.*;

*Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact

unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In

deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de

novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499

F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of

course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including

that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v.*

*Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may...consider the credibility of a claimant when making a

determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)

(the "ALJ's credibility determinations about the claimant are to be given great weight,

particularly since the ALJ is charged with observing the claimant's demeanor and credibility.")

(quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree

is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony,

and other evidence.").

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.

42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely

because it disagrees or because "there exists in the record substantial evidence to support a

different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006);

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more

than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241;

*Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of

choice' within which the Commissioner may proceed without interference from the courts."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800

F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*,

499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the

Commissioner's factual findings for substantial evidence, a reviewing court must consider the

evidence in the record as a whole, including that evidence which might subtract from its weight.

*Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of

appeals and the district court may look to any evidence in the record, regardless of whether it has

been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir.

2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss

every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167

Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.") (internal

citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526

(6th Cir. 2006).

### B.      *Governing Law*

The "[c]laimant bears the burden of proving his entitlement to benefits."  *Boyes v. Sec'y*

*of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc.*

*Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act,

including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.)

and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled prior to the

expiration of their insured status; Title XVI benefits are available to poverty stricken adults and

children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).

While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial
> gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments, that "significantly limits...physical or
> mental ability to do basic work activities," benefits are denied
> without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of
> the impairments listed in the regulations, the claimant is
> conclusively presumed to be disabled regardless of age, education
> or work experience.
>
> Step Four:  If the claimant is able to perform his or her past
> relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that
> plaintiff can perform, in view of his or her age, education, and
> work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R.

§§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive

finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of

limitations caused by her impairments and the fact that she is precluded from performing her past

- 11 -

relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the

analysis reaches the fifth step without a finding that the claimant is not disabled, the burden

transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir.

2006). At the fifth step, the Commissioner is required to show that "other jobs in significant

numbers exist in the national economy that [claimant] could perform given [his] RFC and

considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v)

and (g).

### C. *Analysis and Conclusions*

An ALJ is generally required to give a treating physician's opinion controlling weight "if

the opinion of the treating physician as to the nature and severity of a claimant's conditions is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence in [the] case record . . . ." *Rogers*, 486 F.3d at 242;

*see* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (discussing the weight to be given a treating

physician's opinion). Even when not given controlling weight, the opinions of treating physicians

are entitled to deference. "In many cases, a treating source's medical opinion will be entitled to

the greatest weight and should be adopted, even if it does not meet the test for controlling

weight." S.S.R. 96-2p (1996), 1996 S.S.R. LEXIS 9, at **9-10. This is so:

> since these sources are likely to be the medical professionals most
> able to provide a detailed, longitudinal picture of [a claimant's]
> medical impairment(s) and may bring a unique perspective to the

> medical evidence that cannot be obtained from the objective
> medical findings alone or from reports of individual examinations,
> such as consultative examinations or brief hospitalizations.

> 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

If not accorded controlling weight, the ALJ must consider a series of factors in determining

the weight to be accorded the treating physician's opinion, including: "the length of the treatment

relationship and the frequency of examination, the nature and extent of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a whole, and the

specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.

2004); *see also Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). Additionally,

the ALJ "must provide good reasons for discounting treating physicians' opinions, reasons that

are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d

at 242.

        After review of the record, I conclude that the decision of the ALJ did not give

appropriate weight to Plaintiff's treating physicians and/or did not adequately explain why he

departed from the diagnoses of those physicians, in particular the unequivocal opinion of Dr.

Densley that Plaintiff's back condition precluded him from all work.  Simply put, the ALJ did

not set forth "good reasons" for discounting the opinions of Plaintiff's treating physicians.

Therefore, a remand is required so that the ALJ can, at a minimum, explain more fully why he

rejected the opinions of Plaintiff's treating physicians.

Moreover, the ALJ improperly rejected Plaintiff's complaints of disabling pain.  The ALJ

stated that "the clinical findings fail to document disabling pain," (Tr. 16) however, in making

this statement the ALJ both misapplied the test for evaluating pain set forth in *Duncan v.*

*Secretary of HHS*, 801 F.2d 847 (6th Cir.1986), and gave an inappropriately selective reading to

the medical evidence.  *Duncan* set the standard for reviewing subjective complaints of pain.

"First, we examine whether there is objective medical evidence of an underlying medical

condition. If there is, we then examine: (1) whether objective medical evidence confirms the

severity of the alleged pain arising from the condition; or (2) whether the objectively established

medical condition is of such a severity that it can reasonably be expected to produce the alleged

disabling pain." *Id.*, 801 F.2d at 853.

The starting point in scrutinizing subjective complaints of pain under *Duncan* is to

determine if there is objective medical evidence of an underlying medical condition. Plaintiff

easily passes that test.  Based on physical examination and imaging tests (MRIs), Plaintiff was

diagnosed with chronic degenerative disc disease at L5-S1 (Tr. at 124-126).  Indeed, the ALJ

found that "[t]he medical evidence does document a back impairment..." (Tr. at 18).  Plaintiff's

neurologist, Dr. Rengachary, recommended aggressive back surgery and Plaintiff's personal

physician, Dr. Densley, stated unequivocally that Plaintiff suffered from a severe back condition.

As to the second part of the *Duncan* test, the evidence produced at the administrative

hearing overwhelmingly shows that the Plaintiff's objectively established medical condition is of

such severity that it could reasonably be expected to produce disabling pain.  In making a

determination under this second prong of *Duncan*, an ALJ must consider several factors set forth

in 20 C.F.R. § 404.1529(c)(3):

> Factors relevant to your symptoms, such as pain, which we will
> consider include: (I) Your daily activities; (ii) The location,
> duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors; (iv) The type, dosage,
> effectiveness, and side effects of any medication you take or have
> taken to alleviate your pain or other symptoms; (v) Treatment,
> other than medication, you receive or have received for relief of
> your pain or other symptoms; (vi) Any measures you use or have
> used to relieve your pain or other symptoms (e/g., lying flat on your
> back, standing for 15 to 20 minutes every hour, sleeping on a
> board, etc.); and (vii) Other factors concerning your functional
> limitations and restrictions due to pain or other symptoms.

In this case, the ALJ overstated the import of Plaintiff's daily activities, while understating the

significance of his medication regimen, his treatment and the intensity and frequency of his pain.

In terms of daily activities, the ALJ stated as follows: "[Plaintiff] estimated that he can

only sit for 20-30 minutes, stand for 20-30 minutes, and lift up to 10 pounds. He also testified

that he naps and watches television on a typical day and has to lie down about 4-5 hours a day.

The claimant further indicated that he has a kidney problem, causing frequent urination....

[Plaintiff] reported in a Function Report dated December 2005 that he gets up and gets his

children ready for school, cooks, washes dishes, does light laundry, shops, handles his own

finances, and engages in social activities two to three times a week" (Tr. at 16, 20). The ALJ then

concluded that the Plaintiff "has the residual functional capacity to perform the full range of

sedentary work" (Tr. at 17).  There is, however, a profound difference between an individual with

a sedentary lifestyle and one having a sedentary RFC, and the ALJ erred in conflating the two

- 15 -

concepts. While Plaintiff's daily activities might suggest an individual with a sedentary lifestyle,

it hardly portrays a person who can perform a sedentary-level job five days a week, eight hours a

day.  Furthermore, the ALJ also noted that Plaintiff "does take [prescription] medications for

pain relief, [but] there is no indication that the medication does not work" (Tr. at 19).  However,

this conclusion does not square with the conclusions of Plaintiff's doctors, including the

statement that "conservative measures have failed" to help Plaintiff (Tr. at 126).  In sum, the

ALJ's decision in this case – based on a selective assessment of the record – is not supported by

substantial evidence. Nor is the ALJ's rejection of the Plaintiff's credibility supported by

substantial evidence. The great weight of the evidence shows that Plaintiff has suffered from

intractable back pain for many years, and was unable to perform substantial gainful employment.

It appears that the ALJ's decision to deny benefits was largely based on Plaintiff's refusal

to undergo back surgery.  However, in order to support a denial of benefits, the evidence must

show that prescribed treatment would not only improve the claimant's health, but would restore

the claimant's ability to perform substantial gainful activity.  *See Harris v. Heckler*, 756 F.2d

431, 435-436 (1985); *Fraley v. Secretary of H.H.S.*, 733 F.2d 437, 440 (1984).  While the

medical evidence indicates that surgery might improve Plaintiff's condition, the record is devoid

of any evidence that the proposed surgery would **restore Plaintiff's ability to work**.  *See* 20

C.F.R. § 404.1530(a).  In addition, it appears that surgery was only a suggested course of

treatment, rather than a prescribed course of treatment.  *See Young v. Califano*, 633 F.2d 469,

472-73 (6th Cir.1980).  There is simply no evidence that Plaintiff's unwillingness to follow a

recommendation to undergo surgery constituted a willful failure to follow prescribed treatment.

"It is not [Plaintiff's] burden to undergo any and all surgical procedures suggested by his physician lest he is barred from receiving disability benefits."  *Fraley, supra*, 733 F.2d at 440. Finally, where a claimant's treating physician considers the claimant's decision not to undergo prescribed treatment to be a reasonable decision, good cause exists for the failure to receive the treatment.  *See Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  There is no indication in the record that Plaintiff's treating physicians considered his decision to forgo surgery to be an unreasonable one.

## IV.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, that Defendant's motion for summary judgment be **DENIED** and that this case be **REMANDED** for further proceedings addressing whether the treating physicians' opinion should be given controlling weight and, if not, the reasons for whatever weight it is given.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: November 3, 2009


Certificate of Service

I hereby certify that a copy of the foregoing document was served on the parties of record on this date, November 3, 2009, by electronic and/or first class U.S. mail.

s/Melody R. Miles
Case Manager to Magistrate Judge Mark A. Randon